IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VESTA FIRE INSURANCE CORP.,　　　)
　　　　　　　　　　　　　　　　　　)　　2:04-cv-0296-GEB-PAN
　　　　　　　　Plaintiff,　　　)
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　FINAL PRETRIAL ORDER
INSURANCE VENTURES, INC.; PAUL　　)
MCNEECE ROESSER; ROLAND CLARK　　)
COLTON; STEPHANIE FRANCIS SMITH;　)
CARL FRANK; and LAW OFFICES OF　　)
COLTON & ROESSER,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　)
_____)
　　　　　　　　　　　　　　　　　　)
AND RELATED COUNTER-CLAIM AND　　)
THIRD-PARTY COMPLAINT　　　　　)
　　　　　　　　　　　　　　　　　　)
_____)

On March 10, 2006, the parties were notified that the final pretrial conference then scheduled for March 13, 2006, was vacated because this Order would issue.

I.  JURY/NON-JURY

All issues shall be tried to a jury.

II.  DISPUTED EVIDENTIARY ISSUES

The parties Joint Pretrial Statement ("JPS") lists matters for which the "parties anticipate disputes concerning the admissibility of evidence . . . ."  (JPS at 10.)  Some of the

1

matters in the "Disputed Evidentiary Issues" section of the JPS are too vague to disclose the nature of the dispute.  Moreover, the section contains matters that should have been raised during law and motion.  Therefore, the Court will not entertain any motions in limine from the parties.  Instead, the parties shall fully brief bona fide anticipated evidentiary issues in their respective trial briefs.  L.R. 16-285(a).

### III.   FACTUAL, LEGAL AND/OR EQUITABLE CONTENTIONS

A.   The Final Pretrial Order supersedes the pleadings and controls the facts and claims which may be presented at trial. Any legal theory of relief or affirmative defense asserted in the pleadings but not preserved for trial in this section of the Final Pretrial Order cannot be raised during the trial.  Therefore, to preserve an issue for trial, and to be entitled to jury instructions on that issue, the issue shall be identified and preserved in this section of the Order.  Failure to do so dismisses, waives or abandons that issue, claim or defense. Hotel Emp., et al. Health Tr. v. Elks Lodge 1450, 827 F.2d 1324, 1329 (9th Cir. 1987) ("Issues not preserved in the pretrial order are eliminated from the action.").

B.   The following issues are preserved for trial provided jury instructions are submitted as required by section "XI" of this Order:

Vesta's Claims

1.   Vesta's first claim alleges IV, Carl Frank, Roland Colton, Stephanie Smith, and Paul Roesser  breached their fiduciary duties to Vesta as follows:

1              a.   Carl Frank, Roland Colton, Stephanie

2  Smith, and Paul Roesser breached their fiduciary duties by failing

3  to notify Vesta of the following material facts:

4                  (1) That IV was operated and controlled by

5  Roland Colton ("Colton"), a convicted felon who was prohibited by

6  federal law from engaging in the business of insurance without the

7  express written permission of the State insurance regulators;

8                  (2) That Vesta's premiums were going to be

9  deposited into a commingled account controlled and directed by

10  Colton;

11                  (3)  That Colton was the subject of a

12  multi-million dollar bankruptcy at the time he was exercising

13  control of Vesta's fiduciary trust account;

14                  (4)  That IV was secretly owned and

15  operated by Colton, his partner, and their family members;

16                  (5) That Colton was a convicted felon who

17  had previously been held by a court to be the "alter ego" of

18  another failed insurance company which had defaulted on its

19  obligations, resulting in judgments against him;

20                  (6)  That Colton was a convicted felon who

21  controlled IV, and routinely served as "corporate counsel" to a

22  number of Colton-created insurance agencies and companies over

23  which he exercised complete financial and administrative control;

24                  (7)  That the felony for which Colton had

25  been previously convicted was one of "financial dishonesty" and

26  related to the filing of a false tax return;

27                  (8)  That Vesta's policyholders' premium

28  trust funds were being used to pay outstanding obligations that IV

owed to Explorer/ICW, the insurer whose program preceded Vesta's
program; and

(9)  That IV was acting in ways contrary
to Vesta's interests as outlined in sub-section "b" below.

b.   IV breached its fiduciary duties to Vesta
by:

(1) Using Vesta's funds to pay
Explorer/ICW;

(2)  Using Vesta's funds to secure a
letter of credit for the benefit of Explorer/ICW;

(3)  Failing to account for Vesta's
policyholder premium funds;

(4)  Failing to disclose to Vesta that it
had commingled Vesta's premiums and transferred Vesta funds to
Explorer/ICW;

(5)  Failing to provide Vesta's staff with
signature authority on Vesta accounts;

(6)  Failing to establish a separate trust
fund account for Vesta's premiums;

(7)  Failing to follow Vesta's
instructions not to sell homeowner's policies in contravention of
Vesta's underwriting guidelines;

(8)  Commingling Vesta's policyholder
premium trust funds with ICW/Explorer premiums; and

(9)  Failing to inform Vesta as to how its
policyholder premium trust funds were being utilized.

2.   Vesta's second claim alleges IV breached its
contract with Vesta by:

1       a. Commingling the funds of Vesta and
2 Explorer/ICW;

3       b. Failing to secure a security bond;

4       c. Improperly paying itself commissions;

5       d. Selling insurance policies in
6 contravention of Vesta's instructions;

7       e. Failing and refusing to provide Vesta with
8 a full, complete and accurate accounting of its policyholders'
9 premiums;

10       f. Failing and refusing to remit to Vesta in
11 excess of $2,570,093 in policyholder premiums held in trust for
12 Vesta's benefit;

13       g. Failing and refusing to comply with all
14 relevant laws regulating the insurance business as required under
15 Section 3.11 of the Agreement; and

16       h. Paying Explorer/ICW with Vesta's funds.

17    3. Vesta's third claim alleges IV breached the
18 implied duty of good faith and fair dealing owed to Vesta by
19 committing every action identified in sub-section "2" above, and by
20 refusing to properly account for and remit to Vesta policyholder
21 premiums held in trust by IV when requested to do so by Vesta.

22    4. Vesta's fourth claim alleges that IV, Carl
23 Frank, Roland Colton, Stephanie Smith, and Paul Roesser violated
24 their statutory duties codified in California Insurance Code
25 sections 1733 and 1734 by diverting Vesta's policyholder premium
26 funds for their own purpose.

27

28

5.    Vesta's fifth claim alleges that IV, Roland Colton, Paul Roesser, and the Law Offices of Colton & Roesser wrongfully converted $2,570,093 of Vesta's funds.

6.    Vesta's sixth claim alleges Defendants committed fraud by inducing Vesta to enter into the agreement without disclosing the following material facts:

a.    That IV was operated and controlled by Colton, a convicted felon who was prohibited by federal law from engaging in the business of insurance without the express written permission of the State insurance regulators;

b.    That Vesta's premiums were going to be deposited into a commingled account controlled and directed by Colton;

c.    That Colton was the subject of a multi-million dollar bankruptcy at the time he was exercising control of Vesta's fiduciary trust account;

d.    That IV was secretly owned and operated by Colton, his partner, and their family members;

e.    That Colton was a convicted felon who had previously been held by a court to be the "alter ego" of another failed insurance company which had defaulted on its obligations, resulting in judgments against him; and

f.    That Colton was a convicted felon who controlled IV, and routinely served as "corporate counsel" to a number of Colton-created insurance agencies and companies over which he exercised complete financial and administrative control.

1       7.  Vesta's seventh claim alleges IV agreed in

2 writing that it was indebted to Vesta in the amount of $2,570,093;

3 and therefore, IV owes that amount as an account stated.

4       For the above claims Vesta seeks actual, special, and

5 punitive damages.  Vesta also seeks attorney's fees and costs,

6 recovery of fees paid to IV, prejudgment interest, and its costs to

7 trace improperly diverted funds.  Finally, Vesta requests that a

8 constructive trust be imposed on assets of Defendants which were

9 purchased or improved with Vesta's funds.

10 IV's Claim[1]

11       1.  IV's claim for relief alleges Vesta owes IV

12 various sums of money under the terms of the Agreement.  IV seeks

13 an accounting of all these funds, and recovery of any amount found

14 to be owed.

15 Affirmative Defenses

16       The defenses asserted in the parties' Joint Pretrial

17 Statement have not been preserved because they do not constitute

18 affirmative defenses.  Zivkovic v. Southern Cal. Edison Co., 302

19 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that

20 plaintiff has not met [his] burden of proof is not an affirmative

21 defense. . . .  [A] defense which points out a defect in the

22 plaintiff's prima facie case is not an affirmative defense.").

23 ─────────────

24     [1]  On February 28, 2006, IV filed a motion to amend its
counter-claim and third-party complaint.  The Rule 16 Scheduling

25 Order established December 21, 2005, as the last day for hearing
law and motion matters.  (Order filed Sept. 29, 2005.)  Since IV's

26 motion is brought after the law and motion deadline, it is denied
as untimely.  However, the Court notes IV's desire, evinced in its

27 motion to amend and in the JPS, to only prosecute its claim for
accounting.  Therefore, only that claim, as presented in the JPS,

28 is preserved for trial.

C.   In addition to the matters set forth in Local Rule 16-285, the parties shall brief the following points of law in their trial briefs:

1.   The elements, standards, and burdens of proof as to each of party's causes of action, including citations of authority in support thereof.

2.   The elements, standards, and burdens of proof as to each of party's defenses, including citations of authority in support thereof.

Notwithstanding Local Rule 16-285, trial briefs shall be filed with the Court no later than <u>April 5, 2006</u>.  A joint or partial joint trial brief is permitted.  All legal positions briefed in the trial brief shall be supported with case and applicable statutory authority.  <u>See</u> Local Rule 16-285.  If separate or partial separate trial briefs are submitted, responding briefs, if any, shall be filed with the Court no later than five (5) court days prior to trial.  The trial brief(s) must include "a summary of points of law, including reasonably anticipated disputes concerning admissibility of evidence, legal arguments, and citations of authority in support thereof."  Local Rule 16-285(a)(3).

IV.   <u>WITNESSES</u>

A.   Vesta expects to call as witnesses, either in person or by deposition, some or all of the persons listed in Exhibit C of the parties' Joint Pretrial Statement.

B.   Defendants expect to call as witnesses, either in person or by deposition, some or all of the persons listed in Exhibit D of the parties' Joint Pretrial Statement.

C.  Each party may call a witness designated by the other.

D.  No person, other than those named on these witness lists, will be permitted to testify unless:

(1) The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not reasonably be anticipated at the pretrial conference; or

(2) The witness was discovered after the pretrial conference and the proffering party makes the showing required in sub-section "E", below.

E.  If a witness is discovered after the pretrial conference, counsel for the party offering the witness shall promptly inform the Court and opposing parties of the existence of the unlisted witness so that the Court may consider at trial whether the witness shall be permitted to testify.  The witness will be not be permitted to testify unless:

(1) The witness could not reasonably have been discovered prior to pretrial;

(2) The Court and opposing counsel were promptly notified upon discovery of the witness;

(3) If time permitted, counsel offered the witness for deposition; and

(4) If time did not permit, a reasonable summary of the witness' testimony was provided to opposing counsel.

V.  <u>EXHIBITS</u>

A.  Vesta intends to offer in evidence the exhibits described in Exhibit E of the parties' Joint Pretrial Statement.

B.   Defendants intend to offer in evidence the exhibits described in Exhibit F of the parties' Joint Pretrial Statement.

C.   No other exhibits will be permitted to be introduced unless:

(1) The party seeking to use the unlisted exhibit demonstrates that the exhibit is being used to rebut evidence which could not reasonably have been anticipated at the pretrial conference; or

(2) The unlisted exhibit was discovered after the pretrial conference and the offering party makes the showing required in sub-section "D", below.

D.   Any party proposing to introduce an exhibit which was discovered after the pretrial conference shall promptly notify the Court and opposing counsel of the existence of such exhibit.  The Court will not permit any such exhibit to be introduced unless it finds:

(1) That the exhibit could not reasonably have been discovered prior to the pretrial conference;

(2) The Court and counsel were promptly informed of the exhibit's existence; and

(3) That the offering party has delivered a copy of the exhibit to opposing counsel, or, if the exhibit may not be copied, that the offering counsel has made the exhibit reasonably available for inspection by opposing counsel.

E.   Vesta's exhibits shall be numbered and marked with colored stickers provided by the Court while Defendants' exhibits shall be designated by alphabetical letter also marked with colored

stickers provided by the Court.  To obtain stickers, parties should contact the Clerk of Court at (916) 930-4000.

Counsel shall produce all exhibits to the Clerk's Office on the Friday before the before trial date, no later than 4:00 p.m. At that time, the parties shall also furnish the Court with a copy of each exhibit, unless the exhibit is physically incapable of being reproduced.  Failure to produce exhibits as ordered could result in waiver of the right to offer those exhibits.  Each party submitting exhibits shall furnish a list to the Court, the courtroom deputy and opposing counsel itemizing the exhibits.

VI. <u>FURTHER PREPARATION FOR USE OF DISCOVERY DOCUMENTS</u>[2]

A.  It is the duty of counsel to ensure that any depositions which are to be used at trial for any purpose shall have been filed with the clerk, and counsel are cautioned that a failure to discharge this duty may result in preclusion of the use of the unfiled depositions or in the imposition of such other sanctions as the Court deems appropriate.

B.  No later than twenty (20) court days before the trial commencement date, counsel for each party shall serve on the other parties a statement designating all answers to interrogatories and all portions of depositions (except for passages to be used solely for refreshing recollection, impeachment or rebuttal).  No later than ten (10) court days before the trial commencement date,

---

[2]    Counsel for the parties are required to meet and confer on whether it is appropriate to submit any documents to the judge prior to trial.  If the parties decide this is appropriate, they shall reflect their agreement in a stipulation which has attached thereto whatever documents they agree can be considered by the judge before trial.  The stipulation should be filed and submitted to the judge's chambers at the parties' earliest convenience.

counter-designations of other portions of these discovery documents may be served.  No later than five (5) court days before trial, the parties shall file and serve any preserved evidentiary objections to any designated discovery, or said objections are waived.

VII.  <u>FURTHER DISCOVERY OR MOTIONS</u>

Pursuant to the Court's Pretrial Scheduling Order, all discovery and law and motion was to have been completed prior to the date of the final pretrial conference.  That order is confirmed.  The parties are, of course, free to conduct any additional discovery they desire pursuant to informal agreement.  However, any such agreement will not be enforceable in this Court.

VIII.  <u>SETTLEMENT NEGOTIATIONS</u>

No settlement conference is scheduled in this matter.  This does not preclude the parties from asking the assigned magistrate judge whether he nevertheless will serve as a settlement judge.

IX.  <u>AGREED STATEMENT</u>

The parties shall submit a short, jointly-prepared statement concerning the nature of this case that can be read to the jury at the commencement of trial.  The statement shall be provided to the Court no later than ten (10) court days before the commencement of trial.  If the parties fail to do this, they may be required to give their respective opening statements before voir dire.  Separate statements shall be submitted if agreement is not reached.

X.  <u>SEPARATE TRIAL OF ISSUES</u>

The trial will be conducted in two phases:  liability and punitive damages.  If the jury finds punitive damages are

recoverable in the liability phase, trial on the amount of punitive
damages will immediately occur.  During the first phase of the
trial, the jury will be given a liability instruction on punitive
damages along with the other closing instructions and a verdict
form which will include the question whether punitive damages
should be awarded.  If the answer is yes, the second phase of the
trial would then occur with the presentation of financial condition
evidence pertinent to the amount of punitive damages, following
which the parties would present closing argument on that issue and
a second phase jury instruction would be given to the jury on the
issue.  The jury would then deliberate on the issue and fill in a
punitive damages verdict form.

XI.  JURY INSTRUCTIONS, VOIR DIRE, AND VERDICT FORMS

A.    The parties are to prepare jury instructions, in the
manner specified in paragraph B below.  Counsel shall tailor all
general instructions to the facts and issues in suit.

B.    Counsel are directed to confer and to attempt to
agree upon a joint set of jury instructions.  All instructions,
both general and specific, shall be submitted in the exact
numerical order counsel desires them given to the jury and shall be
tailored to the facts and issues in suit.

The joint set of instructions shall be filed with the
court clerk fifteen (15) court days prior to the date of the trial
and shall be identified as the "Jury Instructions Without
Objection."  See L.R. 51-163(b).  As to instructions on which there
is dispute, the parties shall adhere to the following procedure:
1) the party offering the disputed instruction(s) shall submit the
instruction(s) as its package of proposed jury instructions, shall

submit a brief memorandum in support of the proposed instruction(s)
and shall number the disputed instruction in a manner that shows
where each disputed instruction should be placed in the tendered
agreed upon instructions.  The contested instruction(s) and
memorandum in support shall be filed with the joint set of
instructions fifteen (15) court days prior to the date of the
trial; 2) the party opposed to the contested instruction(s) shall
submit a brief memorandum succinctly stating the legal basis of the
objection(s); 3) the memoranda in opposition to the contested
instruction(s) shall be filed ten (10) court days prior to the date
of the trial.

C.   All instructions shall be, to the extent possible,
concise, understandable, and <u>neutral</u> statements of law.  They shall
be prepared in accordance with Local Rule 51-163.  Ninth Circuit
Pattern Instructions are preferred.

D.   It is the parties' responsibility to ensure that
jury instructions are submitted on all issues preserved for trial
in accordance with the schedule set forth above.  Pursuant to Local
Rule 51-163, instructions not presented in accordance with this
Order will be refused unless it is shown either (1) that the
necessity for the request arose in the course of trial; the
instructions could not reasonably have been anticipated prior to
trial from the Final Pretrial Order; and the request for such
additional instructions is presented to the Court as promptly as
possible; or (2) that the refusal to give such instructions would
constitute manifest injustice under Rule 16(e).

Likewise, any objections to proposed instructions not
made in accordance with this Order will be overruled as untimely

unless it is shown either (1) that the grounds therefor arose in the course of trial and the intention to make such objections is communicated to the Court as promptly as possible, or (2) that the giving of such instructions would constitute plain error.

E.   Most of the examination of prospective jurors is conducted by the Court.  The parties are directed to meet and confer and attempt to agree upon a joint set of proposed voir dire questions.  These questions shall include any voir dire questions supplied by the Court that the parties believe are necessary.  The joint set of voir dire questions shall be filed with the Court fifteen (15) court days prior to the date of the trial.  Parties may also submit proposed voir dire questions which are disputed. Disputed voir dire questions shall be filed with the Court fifteen (15) court days prior to the date of the trial and shall be accompanied by an explanation as to the need for the question and supporting case authority when available.  The opposing party shall respond with reasons for the opposition and any supporting case authority no later than ten (10) court days prior to the date of trial.  Each side is granted fifteen (15) minutes to conduct voir dire following the Court's examination of prospective jurors.

F.   The parties shall file a joint verdict form concurrently with proposed jury instructions fifteen (15) court days prior to the commencement of trial.  See L.R. 51-163(e).  A special verdict or interrogatories shall be included for all factual disputes submitted to the jury that must be resolved before questions of law can be decided, and for any other issue on which specific responses are desired.  The verdict form shall be prepared in accordance with Local Rule 51-163(e).  At the same time, where

disagreements exist, the parties shall explain the disagreement and submit points and authorities supporting their respective positions.

At the time of electronically filing the jury instructions and verdict form, counsel shall also submit a copy of the sanitized joint jury instructions, the sanitized disputed jury instructions, and the joint verdict form to the Court by email to geborders@caed.uscourts.gov in accordance with L.R. 51-163(b)(1).

G.    The failure of one or more of the parties to participate in the preparation of joint jury instructions, proposed voir dire questions, or verdict form does not excuse the other parties from their obligation to timely file these documents with the Court in accordance with this Order.  In the event that a party fails to participate as ordered, the party timely submitting these documents shall include a declaration explaining why it was unable to obtain the cooperation of the other party or parties.

XII.   USE OF STRUCK JURY SELECTION SYSTEM

Eight (8) jurors will be impaneled.  The "struck jury" system will be used to select the jury.[3]  At the beginning of the voir dire process, eighteen prospective jurors, randomly selected

---

[3]    As explained in United States v. Blouin, 666 F.2d 796, 798 (2d Cir. 1981), "the goal of the 'struck jury' system is to whittle down an initially selected group . . . [to the amount of jurors] who will serve as the petit jury."  The selected group consists of the jurors who will hear the case, plus the number of jurors required to enable the parties to use the combined number of peremptory challenges allotted to both sides for striking jurors from the group.  Typically extra jurors are included in the select group in the event the minimum amount of jurors required for the "struck system" is reduced "for cause" or some other reason.

by the Jury Administrator, will be seated for voir dire.[4]  The
order of the jurors' random selection is reflected by the order in
which they will be seated.  The first randomly selected juror will
be in jury seat number one, which is at the extreme right-hand side
of the jury box in the top row as the jury box is viewed from the
well of the courtroom.  The eighth juror will be in the eighth
seat.  The ninth selected juror will occupy the seat located at the
extreme right-hand side of the jury box in the bottom row.  The
fifteenth seat will be in the left-hand side of that row.  Three
chairs will be placed in front of the jury box.  The sixteenth
juror will occupy the seat on the right and the eighteenth juror
will occupy the seat on the left.  The first eight (8) jurors on a
list, which shall be given to counsel, will constitute the petit
jury unless one or more of those eight (8) is excused for some
reason.  Assuming that the first and fifth jurors on the list are
excused, the second listed juror becomes the first, and the other
jurors' numbers are changed accordingly, with the ninth juror on
the list becoming seventh on the list; however, the jurors continue
to be identified by their original numbers.

        Following the voir dire questioning, each side will
exercise its three allowed peremptory strikes.[5]  A copy of the
"strike sheet" which will be used is attached to this Order.
Generally, the potential jurors are given a break for the amount of
time the parties estimate it will take them to exercise peremptory

---

[4]    More could be seated.

[5]    During the questioning, the attached Query Re Excuse
Potential Jurors form could be given to the parties to determine if
a particular juror should be excused.  The attached for cause form
will also be used.

strikes.   Therefore, before the striking process begins, the
parties are requested to provide an estimate of how long it will
take to exercise their peremptory strikes so the potential jurors
can be allowed to take a break for that amount of time.   Peremptory
strikes will be exercised silently, by passing the strike sheet
between the parties, with the Plaintiff going first.   To use a
strike, write the seat number of the juror above the line where the
strike is required to be designated.[6]   A party who does not use a
strike waives any further right to exercise that strike and is
required to reflect this waiver by writing the word "pass" on the
strike sheet where the strike was supposed to have been exercised.

### XIII.   ATTORNEY'S FEES

The parties are referred to Local Rule 54-293 concerning
the post-trial procedure for seeking an award of attorney's fees.

### XIV.   JURY INSTRUCTION AND VERDICT FORM CONFERENCE

A jury instruction and verdict form conference will be
scheduled if necessary.   See Local Rule 51-163(f).   The attorney
who will try the case for each party shall attend the conference.
The purpose of the conferences is to finalize these matters, to the
extent possible, before trial.   The possibility of conferences
being scheduled does not relieve the parties from their obligation
to comply with all provisions of this Order.

---

[6]   For example, assuming Plaintiff elects to strike the
juror in seat number 6, that strike will be exercised and then the
strike sheet is give to defense counsel.   Assuming defense counsel
then strikes the juror in seat 4, the first line of the strike
sheet will appear as follows:

Plaintiff    1  **6**                 Defendant  1 **4**

Defense counsel would then give the strike sheet back to Plaintiff
so she could exercise her second strike.

## XV.   TRIAL DATE

Trial to a jury is set for April 25, 2006.[7]  A trial day will commence at 9:00 a.m. and will adjourn at approximately 4:30 p.m.  At the first phase of the trial, each side has twenty (20) minutes within which to make an opening statement to the jury and seventy-five (75) minutes within which to make a closing argument. If trial proceeds to the second phase, each side has twenty (20) minutes within which to make a closing argument on the punitive damage issue.  Counsel are to call Shani Furstenau, Courtroom Deputy, at (916) 930-4114, one week prior to trial to ascertain the status of the trial date.

## XVI.   COMMUNICATION WITH JURY

The Court intends to communicate the following to the jury just before it retires to deliberate:

1.   Is the United States Marshal's representative present who will take charge of the jury?

2.   Deputy Clerk, please give the oath to the United States Marshal's representative.

3.   The jury may take breaks at will, **without advance permission**, under the general supervision of the United States Marshal's representative.

4.   The jury may go to lunch when they desire, **without advance permission**, under the general supervision of the United States Marshal's representative.  When the jury leaves for lunch, **the United States**

---

[7]   **The parties are required to meet and confer about the length of the trial and to file a document no later than twenty (20) court days before trial in which the length of trial is estimated.**

**Marshal's representative shall tell my courtroom deputy clerk** so that I, my staff, the lawyers, and the parties can be relieved from standby status. This allows those on standby status to go to lunch at the same time the jury has lunch.

5.  The jury is authorized to adjourn for the evening **without advance permission,** and without having to return to this courtroom to be excused by me in front of the parties, but **the United States Marshal's representative shall tell my deputy courtroom clerk** when the jury adjourns so that the judge, the judge's staff, the lawyers, and the parties can be relieved from standby status.

6.  When deliberations are continued the day after evening adjournment, jurors are permitted to proceed directly to the jury deliberation room.  But jurors are to wait until all jurors are present before resuming deliberations.

7.  We desire you to deliberate between the hours of 9:00 a.m. and 4:30 p.m., as necessary.  However, you may deliberate for a shorter or longer period if you desire, provided all of you are in agreement. Otherwise, you should let me know about the disagreement.

8.  If you have a cell phone and/or a device with a wireless internet connection, you must give it to the United States Marshal's representative before you go into the jury deliberation room so that we

can be assured that there is no interference with
your deliberations.  That representative will return
it when you leave the jury deliberation room.

9.   The United States Marshal's representative will
maintain a post outside the jury deliberation room
to protect the jury from outside influences or
visitors.  That representative shall not communicate
with you about the case or the court system because
such conversations could be misconstrued as a
communication that seeks to influence the jury.
Stay in the jury room until all jurors are ready to
leave for a break or lunch.

10.  Please escort all jurors to the deliberation room.

////
////
////
////
////
////
////
////
////
////
////
////
////
////
////

XVII.   <u>OBJECTIONS TO PRETRIAL ORDER</u>

Any party may, within ten (10) court days after the date this Order is filed, file and serve written objections to any part of this Order.  Any objection must specify the requested correction, addition, and/or deletion.  Any response to an objection must be filed and served within ten (10) court days after the objection is filed.  A final pretrial order may only be modified upon a showing of manifest injustice.

<u>FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS ON ANY AND ALL COUNSEL AS WELL AS ANY PARTY OR PARTIES WHO CAUSE NON-COMPLIANCE WITH THIS ORDER.</u>

IT IS SO ORDERED.

Dated:  March 10, 2006

<u>/s/ Garland E. Burrell, Jr.</u>
GARLAND E. BURRELL, JR.
United States District Judge

STRIKE SHEET

Plaintiff     1_____          Defendants   1_____

              2_____                       2_____

              3_____                       3_____

## Query re Excuse Potential Juror

Do you Agree that Juror No. _____ should be excused for the reason stated by the juror or for any other reason?  (Check applicable box below)

|  | Plaintiff's Attorney | | Defendants' Attorney | |
|---|---|---|---|---|
| RESPONSE: | ☐ | ☐ | ☐ | ☐ |
|  | Yes | No | Yes | No |

## Whether Jurors Present During Exercise of Peremptory Challenges

Can the jury be excused for the amount of time it will take to exercise peremptory challenges?  (Set forth response in box below)

Plaintiff's Attorney          Defendants' Attorney

RESPONSE:      ☐    ☐              ☐    ☐

Yes    No              Yes    No

How long do you estimate it will take you to exercise peremptory challenges?  (Set forth minutes in box below)

Plaintiff's Attorney      Defendants' Attorney

MINUTES:      ☐              ☐

<u>FOR CAUSE DOCUMENT</u>
<u>Plaintiff's Counsel</u>

If you have challenges for cause, state the seat number of the juror involved and a brief explanation of the reason for the challenge.

Seat _____

Explanation: _____

_____

_____


Seat _____

Explanation: _____

_____

_____


Seat _____

Explanation: _____

_____

_____


Seat _____

Explanation: _____

_____

_____


List seat numbers of other for cause challenges:  _____, _____,

_____, _____, _____, _____, _____, _____, _____, _____, _____, _____, _____.

***CHECK THIS BOX IF YOU HAVE <u>NO</u> CHALLENGES FOR CAUSE:***     ☐


Signed:_____

<u>FOR CAUSE DOCUMENT</u>
<u>Defendants' Counsel</u>

If you have challenges for cause, state the seat number of the juror
involved and a brief explanation of the reason for the challenge.

Seat _____

Explanation: _____

_____

_____

Seat _____

Explanation: _____

_____

_____

Seat _____

Explanation: _____

_____

_____

Seat _____

Explanation: _____

_____

_____

List seat numbers of other for cause challenges:  _____, _____,

_____, _____, _____, _____, _____, _____, _____, _____, _____, _____.

***CHECK THIS BOX IF YOU HAVE <u>NO</u> CHALLENGES FOR CAUSE:***

Signed:_____